UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.M., | Case No. 1:25-cv-01452-KES-CDB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO GRANT IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | (Doc. 24) |
| | **14-DAY OBJECTION PERIOD** |

Pending before the undersigned is the motion of Defendant United States of America ("Defendant") to dismiss from Plaintiff J.M.'s ("Plaintiff")[1] first amended complaint ("FAC") the seventh cause of action for lack of subject matter jurisdiction and the ninth cause of action for failure to state a claim, filed on February 26, 2026.[2] (Doc. 24). Plaintiff filed an opposition to Defendant's motion to dismiss on March 12, 2026, and Defendant filed a reply on March 23, 2026. (Docs. 26, 27). The undersigned deems the motions suitable for the preparation of findings and recommendations without hearing and oral argument. *See* Local Rule 230(g). For the reasons set forth below, the undersigned will recommend Defendant's motion to dismiss be granted in part as to Plaintiff's negligence claim with leave to amend.

///

///

---

[1] On December 31, 2025, the Court granted Plaintiff's motion to proceed under pseudonym as "J.M." in this action. (Doc. 12).

[2] On March 26, 2026, the presiding district judge referred the pending motion to dismiss to the undersigned for the preparation of findings and recommendations and/or other appropriate action and vacated the noticed hearing. (Doc. 28).

## I.    Relevant Background

### A.    Procedural History[3]

Plaintiff, a former federal inmate proceeding by counsel, initiated this action with the filing of complaint against Defendant United States of America, Atwater John Does 1 and 2 ("Atwater Does"), and Mendota Does 1-5 ("Mendota Does") (collectively, "Defendants") on October 30, 2025. (Doc. 1). On February 13, 2026, Plaintiff filed the operative FAC. (Doc. 23). The case has not been scheduled pending the Court's disposition of the motion to dismiss by Defendant United States of America.

### A.    Plaintiff's FAC[4]

Plaintiff alleges he was the victim of a physical and sexual assault by Bureau of Prisons ("BOP") guards at USP Atwater and the retaliation that followed after he was transferred to FCI-Mendota. (Doc. 23 ¶ 3.1). Plaintiff alleges that on November 2, 2023, while he was incarcerated at USP Atwater, he was physically assaulted by Defendant Sandra Munagay, a BOP guard, following a disagreement about a hat. *Id.* ¶¶ 3.51-60. He alleges that Munagay and other Defendant corrections officers attempted to cover up the assault and then retaliated against him after he lodged a formal complaint against Munagay, including by sexually assaulting him and thereafter attempting to prevent him from being medically evaluated and receiving medical treatment from the sexual assault. *See id.* ¶¶ 3.64-79. Plaintiff further alleges that after he was transferred to FCI-Mendota, while there, he was subjected to unlawful conditions of confinement based on Defendant corrections officers placing him in four-point restraints for extended periods of time without food, water, and use of a restroom. *See id.* ¶¶ 3.84-96.

In the FAC, Plaintiff asserts nine claims for relief, including eight claims under the Federal Tort Claims Act ("FTCA") and an Eighth Amendment claim for deliberate indifference to medical treatment, as follows: (1) assault and battery under the FTCA; (2) sexual assault and sexual battery under the FTCA; (3) intentional infliction of emotional distress under the FTCA; (4) false

---

[3] References to filings herein are to the CM/ECF-assigned page number.

[4] The factual background is derived from allegations in the FAC relevant and material to the instant motion and as raised in the parties' briefing. *See* (Docs. 24, 26, 27).

2

imprisonment under the FTCA; (5) intentional interference with civil rights by threats, intimidation, or coercion under the FTCA; (6) invasion of privacy under the FTCA; (7) negligence under the FTCA ("Count Seven"); (8) malicious prosecution under the FTCA; and (9) Eighth Amendment claims for deliberate indifference to medical treatment under *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) and *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971) ("Count Nine"). (Doc. 23 at 39-49).

Relevant here, in Count Seven, Plaintiff asserts a negligence claim against Defendant as a "reasonable prison administrator" that is "liable for its employees' [negligence and] negligent infliction of emotional distress" against Plaintiff. *See id.* ¶¶ 4.37-48.

In Count Nine, Plaintiff asserts two *Bivens* claims against the Atwater Does and the Mendota Does. In the first *Bivens* claim, he asserts that the Atwater Does were deliberately indifferent to his need for necessary medical treatment. *Id.* ¶ 4.65. Plaintiff alleges that after he was sexually assaulted at USP Atwater, the Atwater Does stood in the medical room to intimidate and ensure that Plaintiff received no actual medical examination, and BOP medical staff failed to provide any medical examination or treatment "even as [Plaintiff] repeatedly stated he had been sexually assaulted because the Atwater Does (who had assaulted him) were present." *Id.* He further alleges that BOP medical staff falsely indicated in medical reports that Plaintiff had no injuries, and that the purpose of denying him medical treatment and the false reports "was to cover up the assaults by BOP staff, including the Atwater Does, and to inflict harm" on Plaintiff. *Id.*

In the second *Bivens* claim, Plaintiff asserts that the Mendota Does were deliberately indifferent to necessary medical treatment as they "intentionally and with deliberate indifference restrained [Plaintiff] without lawful cause, including four-pointing [him] for lengthy periods without food, water, or a toilet, knowing [that Plaintiff] needed medical care and denying it." *Id.* ¶ 4.66. Plaintiff further alleges that the Mendota Does "used shackles so tight as to cause pain, bleeding, and ultimately scarring" on his skin while knowing Plaintiff needed medical care and denying it, and that they knew he needed medical attention and relief "because they witnessed his condition and because he requested it." *Id.*

Plaintiff asserts that "[b]y assaulting and sexually abusing [him] and by deliberately denying

medical treatment, the individual Defendants knew [he] had been or would be seriously harmed, or at the very least were aware of facts and actually inferred a substantial risk of serious harm" and that, as a result, he suffered serious harm for which the individual Defendants are liable for damages. *Id.* ¶¶ 4.67-68.

In his prayer for relief, Plaintiff seeks compensatory damages in an amount to be proven and determined at trial and other relief the Court deems proper or warranted by law. *Id.* at 49.

## II.   <u>Governing Authority</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010). The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). The Court is "not 'required to accept

4

as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).  Nor does the court "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Western Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

### III.    Parties' Contentions

Defendant moves to dismiss Plaintiff's negligence claim for lack of jurisdiction, contending that claim is not viable because the FTCA "only waives the United States' sovereign immunity for negligent acts or omissions by an 'employee of the government' acting within the scope of his or her employment" and "[t]here is no waiver of sovereign immunity for negligence at the institutional level." (Doc. 24-1 at 2) (emphasis removed).  Defendant further moves to dismiss Plaintiff's two *Bivens* claims under Count Nine, arguing that Plaintiff fails to state the first *Bivens* claim for deliberate indifference to a serious medical need against the Atwater Does because Plaintiff's allegations, accepted as true, show that he received timely and appropriate medical care after he reported the alleged sexual assault. *Id.*  Defendant contends the second *Bivens* claim as against the Mendota Does fails because the claim attempts to extend *Bivens* beyond the three "narrowly-cabined contexts" under federal law as the claim is grounded in excessive force by a corrections officer. *Id.* at 2-3.

Plaintiff contends the government's motion to dismiss the *Bivens* claims should be denied as the FAC properly pleads *Bivens* claims for deliberate indifference to serious medical needs in violation of the Eighth Amendment. (Doc. 26 at 7).  Plaintiff asserts that binding precedent under *Carlson v. Green*, 446 U.S. 14 (1980) and recent Ninth Circuit authority including *Watanabe v. Derr*, 115 F.4th 1034, 1043 (9th Cir. 2024) and *Schwartz v. Miller*, 153 F.4th 918, 931 (9th Cir. 2025) affirm his right as a prisoner to sue BOP officials for denial and delay of medical care. *Id.* at 7-10.  Plaintiff argues his first *Bivens* claim against the Atwater Does is "more than sufficient" as "Defendants cannot avoid liability by arguing that a rape victim left untreated and bleeding for

5

five hours received 'timely and appropriate' care" as that "is a question for a jury." *Id.* at 12.  He contends his second *Bivens* claim against the Mendota Does is likewise sufficient to survive the motion to dismiss stage because the claim is identical to his Atwater-related *Bivens* claim for indifference to serious medical needs. *Id.* at 13.  As to his negligence claim, Plaintiff concedes that the claim should be narrowed to remove the negligent-supervision theory and to "more clearly separate the negligence and negligent infliction of emotional distress theories" and therefore seeks leave to amend this claim. *Id.* at 15.

In reply, Defendant does not object to Plaintiff "being granted leave to amend for the stated purpose of abandoning this claim" and to clarify the theories of liability. (Doc. 27 at 2).  Defendant argues that the Atwater-related *Bivens* claim fails because Plaintiff does not allege facts that demonstrate "further significant injury" or "unnecessary and wanton infliction of pain" and Plaintiff has not alleged harm caused by the alleged deliberate indifference. *Id.* at 4-5.  Defendant repeats and maintains its arguments that the Mendota-related *Bivens* claim improperly seeks to extend *Bivens* to the excessive force context. *Id.* at 8-9.

## IV.    **Discussion**

### A.    **Count Seven: FTCA Negligence**

#### 1.    Governing Authority – Negligence

The elements of negligence under California law are: "'(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)).

Unless the law provides otherwise, public employees are liable to the same extent as private persons, and "public entities are generally liable for injuries caused by the negligence of their employees acting in the scope of their employment." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013).

///

6

2.      Governing Authority – FTCA Immunity

"It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued…, and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  "The doctrine of sovereign immunity applies to federal agencies and to federal employees acting within their official capacities." *Hodge v. Dalton*, 107 F.3d 705, 707 (9th Cir. 1997); *Balser v. Dep't of Justice, Office of U.S. Trustee*, 327 F.3d 903, 907 (9th Cir. 2003) ("The United States, as a sovereign, is immune from suit unless it has waived its immunity.").  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1993); *see Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991) ("The courts lack subject matter jurisdiction to hear constitutional damage claims against the United States, because the United States has not waived sovereign immunity with respect to such claims.").

"The FTCA waives sovereign immunity and grants federal district courts exclusive jurisdiction over claims against the United States for 'personal injury or death caused by the negligent or wrongful act or omission of a federal employee acting within the scope of his office or employment.'" *Leuthauser v. United States*, 71 F.4th 1189, 1193 (9th Cir. 2023) (quoting *Millbrook v. United States*, 569 U.S. 50, 52 (2013)); *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015) ("The United States has waived its sovereign immunity with regard to tort liability under the Federal Tort Claims Act 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'") (quoting 28 U.S.C. § 1346(b)(1)); *see Nickles v. United States*, 699 F. Supp. 3d 898, 915 (E.D. Cal. 2023) ("[A] plaintiff must plausibly allege that 'the United States, if a private person, would be liable to the claimant' under state law both to survive a merits determination under Rule 12(b)(6) and to establish subject-matter jurisdiction.") (quoting *Brownback v. King*, 592 U.S. 209, 218 (2021)).

3.      Analysis

As noted above, Defendant does not object to Plaintiff's request for leave to amend "for the

stated purposes of abandoning this claim and 'more clearly separat[ing] [his] negligence and negligent infliction of emotional distress theories.'"  (Doc. 27 at 2) (citing Doc. 26 at 13). Therefore, based on Defendant's non-opposition to further amendment of Plaintiff's negligence claim, the undersigned will recommend Plaintiff's negligence claim be dismissed without prejudice and with leave to amend.  *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear ... that the complaint could not be saved by amendment."); *e.g., Aldama v. General Motors LLC*, No. 23-cv-04326-BLF, 2024 WL 847016, at *5 (N.D. Cal. Feb. 28, 2024) (dismissing claim with leave to amend where plaintiff's opposition acknowledged potential pleading deficiencies and the defendant did not object to amendment).

**B.**    **Count Nine: *Bivens* Eighth Amendment Deliberate Indifference to Serious Medical Needs**

1.    Governing Authority

While "Congress has made a cause of action available to any person who has suffered 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' at the hands of someone acting under color of state law," it "has not created a general cause of action to redress violations of the Constitution by federal officers." *Pettibone v. Russell*, 59 F.4th 449, 454 (9th Cir. 2023) (quoting 42 U.S.C. § 1983) (emphasis in original).

A *Bivens* action is the federal analog to suits brought against state officials under 42 U.S.C. section 1983.  *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006).  The basis of a *Bivens* action is some illegal or inappropriate conduct on the part of a federal official or agent that violates a clearly established constitutional right.  *Baiser v. Dep't of Justice, Office of U.S. Trustee*, 327 F.3d 903, 909 (9th Cir. 2003).  "To state a claim for relief under *Bivens*, a plaintiff must allege that a federal officer deprived him of his constitutional rights."  *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (citing *Schearz v. United States*, 234 F.3d 428, 432 (9th Cir. 2000).  A *Bivens* claim is only available against officers in their individual capacities.  *Morgan v. United States*, 323 F.3d 776, 780 n.3 (9th Cir. 2003); *Vaccaro v. Dobre*, 81 F.3d 854, 857 (9th Cir. 1996).  "A plaintiff must plead more than a merely negligent act by a federal official in order to state a colorable claim under

*Bivens*." *O'Neal v. Eu*, 866 F.2d 314, 314 (9th Cir. 1988).

In *Bivens*, the Supreme Court created an implied cause of action under the Fourth Amendment, "against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." *Egbert v. Boule*, 596 U.S. 482, 490 (2022) (quoting *Bivens*, 403 U.S. at 397). Subsequently, the Supreme Court extended the *Bivens* remedy twice: in *Davis v. Passman*, 442 U.S. 228 (1979) (holding that a *Bivens* remedy exists for a Fifth Amendment gender discrimination claim where a congressman fired an administrative assistant), and in *Carlson v. Green*, 446 U.S. 14 (1980) (holding that a prisoner's estate had a *Bivens* remedy under the Eighth Amendment against prison officials for failing to treat the prisoner's asthma which resulted in his death). "These three cases—*Bivens, Davis, and Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017).

Not all constitutional cases against federal officers for damages may proceed as *Bivens* claims. There is a two-part test to determine whether a *Bivens* action may proceed. *Ziglar*, 582 U.S. at 138-139. To determine whether a *Bivens* claim is cognizable, a court first "ask[s] whether the case presents 'a new *Bivens* context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 139). That is, the Court must determine whether the claim presents a new context from the three cases the Supreme Court has allowed to proceed under *Bivens*. If the answer is no, the claim may proceed. If the answer is yes, the court must apply a "special factors" analysis to determine whether "special factors counsel hesitation" in expanding *Bivens* to the action. *Ziglar*, 582 U.S. at 136.

In *Egbert*, the Supreme Court explained that the essential determination is "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492. If any rational reason exists to defer to Congress to establish a remedy, courts "may not recognize a *Bivens* remedy." *Id*. Further, the existence of alternative remedial structures within the BOP can be a "special factor" to hesitate in finding an available *Bivens* remedy. *Id*.

In *Watanabe*, the Ninth Circuit recently determined that a denial of medical treatment can

proceed under *Bivens*, in specific circumstances, if the individual prison staff acted with deliberate indifference to a serious medical need. *Watanabe v. Derr*, 115 F.4th 1034, 1043 (9th Cir. 2024). The test for deliberate indifference consists of two parts. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted). First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Id*. (internal citations omitted). Second, the plaintiff must show that the defendant's response to the need was deliberately indifferent. *Id*. The second prong is satisfied by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*.

Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*. (internal citations omitted). However, an inadvertent or negligent failure to provide adequate medical care alone does not state a claim under section 1983. *Id*.

2.     <u>Analysis – Defendant USP-Atwater Does ("*Bivens* I")</u>

In the FAC, Plaintiff alleges that after he was sexually assaulted, he was "left bleeding" and that BOP staff attempted to cover up the sexual assault. (Doc. 23 ¶¶ 3.66-67). Specifically, Plaintiff alleges that, with BOP officers present, BOP nurse Plascenia administered an examination that "wasn't real" with records of "no significant findings" and "no apparent distress" and "no injuries were reported or found[.]" *Id*. ¶¶ 3.67-69. After Plaintiff announced that he had been sexually assaulted, BOP Lieutenant Davy noted the accusation had been recorded and that "they needed to report it." *Id*. ¶ 3.71. Plaintiff was thereafter transported to FCI-Mendota where Lieutenant Price falsely told the nurse that Plaintiff "needed no medical help and had already received a medical assessment" in an effort to "prevent further inquiry" and Nurse Encizo noted that Plaintiff was "refusing medical attention." *Id*. ¶¶ 3.72-73. Plaintiff alleges that after he interrupted her and stated he had been sexually assaulted and demanded to meet with psychology, the facility's psychologist, Brian McAleney, and SIS Officer Hellman, "stepped in and met with [Plaintiff" at which point Plaintiff restated his sexual assault and that he "requested a medical exam because 'he believed he was bleeding[.]'" *Id*. ¶¶ 3.73-74. Plaintiff further alleges that at this point, McAleney ensured "a

10

proper medical examination was done[,]" that Plaintiff was properly examined by Nurse Encizo, and that the resulting medical examination record revealed "blood noted to at rectum[.]" *Id.* ¶¶ 3.75-76.

Plaintiff asserts a *Bivens* claim against the Atwater Does for deliberate indifference to his need for medical treatment. Plaintiff alleges that after he was sexually assaulted, the Atwater Does took efforts to intimidate and ensure that Plaintiff received no actual medical examination and that BOP medical staff failed to provide any treatment "even as [Plaintiff] repeatedly stated he had been sexually assaulted[.]" *Id.* ¶ 4.65. He further alleges that BOP medical staff falsely indicated in medical reports that Plaintiff had no injuries, and that the purpose of denying him medical treatment and the false reports "was to cover up the assaults by BOP staff, including the Atwater Does, and to inflict harm" on Plaintiff. *Id.* Plaintiff asserts that "[b]y assaulting and sexually abusing [him] and by deliberately denying medical treatment, the individual Defendants knew [he] had been or would be seriously harmed, or at the very least were aware of facts and actually inferred a substantial risk of serious harm" and that, as a result, he suffered serious harm for which the individual Defendants are liable for damages. *Id.* ¶¶ 4.67-68.

Defendant does not argue that Plaintiff's *Bivens* claim against the Atwater Does arises in a new context and the undersigned finds that a *Bivens* remedy is available, and accordingly, proceeds to consider the merits on whether Plaintiff has stated a *Bivens* claim against the Atwater Does. *See* (Docs. 24-1, 26, 27); *Lanuza v. Love*, 899 F.3d 1019, 1023 (9th Cir. 2018) ("First, courts must determine whether the plaintiff is seeking a Bivens remedy in a new context. … If the answer to this question is 'no,' then no further analysis [whether a *Bivens* remedy is available] is required.").

Plaintiff's allegations, accepted as true, state a *Bivens* claim against the Atwater Does for deliberate indifference to serious medical needs. First, Plaintiff's allegations that he was left bleeding after he was assaulted and sexually assaulted by Atwater Does permit the drawing of a reasonable inference that Plaintiff had a serious medical need that, if left untreated, could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096.

Second, Plaintiff's additional allegations permit the drawing of a reasonable inference that the Atwater Does purposely acted to prevent and ultimately delayed Plaintiff from receiving proper

medical care with deliberate indifference, thereby causing him to be left bleeding and without a proper evaluation until facility psychologist McAleney finally intervened. *Jett,* 439 F.3d at 1096 ("[Deliberate indifference] may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."). Specifically, following the Atwater Does' assault and sexual assault on Plaintiff, they undertook efforts to thwart Plaintiff from receiving adequate medical care—in seeking to intimidate him with their presence and blocking the camera at the first medical assessment and with BOP nurses drafting false reports noting that Plaintiff had no injuries reported or found and that he refused medical treatment—despite Plaintiff's repeated statements that he had been sexually assaulted and his requests to see a psychologist. Therefore, Plaintiff has stated a viable *Bivens* claim against the Atwater Does for deliberate indifference to serious medical needs.

Defendant's argument that Plaintiff fails to state a claim because he ultimately received timely and appropriate medical care is unavailing. "Delaying treatment is an established example of deliberate indifference to a serious medical need, in violation of the Eighth Amendment." *Stanard v. Dy*, 88 F.4th 811, 817 (9th Cir. 2023) (citing *Jett*, 439 F.3d at 1096); *see e.g. id.* ("When Stanard was denied treatment, Defendants did not offer him some alternate timeline by which he would receive necessary care. Instead, they repeatedly informed [him] that he would not receive any … treatment. It was only after Stanard transferred to another facility that he received appropriate care."). The Atwater Does' alleged efforts to intimidate Plaintiff and find that he was not injured despite his complaints effectively delayed him from receiving proper treatment of a rape evaluation until he was transferred to another facility.

Further, Plaintiff's allegations that he was left bleeding and was ultimately evaluated to have tenderness and bleeding to the rectum adequately demonstrate harm caused by the Atwater Does' deliberate indifference. Indeed, the FAC's allegations permit the drawing of a reasonable inference that the Atwater Does were aware that Plaintiff faced a substantial risk of serious harm if he did not receive proper medical care after they physically and sexually assaulted him and he repeatedly requested treatment and to be seen by a psychologist. *See Farmer*, 511 U.S. at 837 (to constitute deliberate indifference, "the [defendant] official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

                3.        <u>Analysis – Defendant FCI-Mendota Does ("*Bivens* II")</u>

As noted above, Plaintiff's Count Nine is captioned as a claim for cruel and unusual punishment and deliberate indifference to medical treatment. (Doc. 23 at 48). He asserts that the Mendota Does were deliberately indifferent to necessary medical treatment as they "intentionally and with deliberate indifference restrained [Plaintiff] without lawful cause, including four-pointing [him] for lengthy periods without food, water, or a toilet, knowing [that Plaintiff] needed medical care and denying it." *Id.* ¶ 4.66. He alleges that the Mendota Does "used shackles so tight as to cause pain, bleeding, and ultimately scarring" on his skin while knowing Plaintiff needed medical care and denying it, and that they knew he needed medical attention and relief "because they witnessed his condition and because he requested it." *Id.* Plaintiff further alleges that "[b]y assaulting and sexually abusing [him] and by deliberately denying medical treatment, the individual Defendants knew [he] had been or would be seriously harmed, or at the very least were aware of facts and actually inferred a substantial risk of serious harm" and that, as a result, he suffered serious harm for which the individual Defendants are liable for damages. *Id.* ¶¶ 4.67-68.

Defendant argues that Plaintiff's *Bivens* claim against the Mendota Does presents a new context because the claim is tantamount to an excessive force claim that is foreclosed as an improper extension under *Bivens*. (Doc. 24-1 at 14-17). Defendant relies on *Goldey v. Fields*, 606 U.S. 942 (2025) and *Chambers v. C. Herrera*, 78 F.4th 1100 (9th Cir. 2023). *Id.* Plaintiff agrees that, under *Chambers*, he is "barred from vindicating his constitutional right to be free from excessive force here" but that his claim is instead a claim for deliberate indifference to serious medical needs "identical to his Atwater-related *Bivens* claim[.]" (Doc. 26 at 13); *see Chambers*, 78 F.4th at 1106 (finding a new *Bivens* context presented where plaintiff's claim is "premised on a *failure to protect*, [which is] dissimilar to *Carlson's* failure to provide medical care [claim]").

In *Chambers*, the plaintiff alleged that after he was assaulted by a defendant-officer, he suffered a broken arm and was denied treatment in an effort to "cover up the assault." *Id.* at 1108. The Ninth Circuit agreed with the district court's finding that it was unclear whether plaintiff's

13

*Bivens* claim was viable because he "failed to allege any facts about his injuries, what examination or treatment (if any) he received before or after having x-rays, and the ultimate condition of his arm." *Id.* Thus, the Ninth Circuit remanded to the district court to assess the viability of the claim, which "would be the same constitutional right in *Carlson*." *Id.*

Here, the Court finds that Plaintiff's allegations—that the Mendota Does denied him medical care after they restrained and assaulted him despite knowing he needed medical care because the Mendota Does perpetrated the assault against him and "witnessed [Plaintiff's] condition and he requested [medical care]"—raise a claim that is not distinguishable from a recognized *Bivens* claim under *Carlson* "which involved a deliberate indifference claim for inadequate medical attention[.]" *See Chambers*, 78 F.4th at 1107. Plaintiff does not complain that the Mendota Does failed to protect him from excessive force but that the Mendota Does were deliberately indifferent to his need for medical care after they restrained and shackled him "so tight as to cause pain, bleeding, and ultimately scarring" on Plaintiff's skin and denied him that care despite their awareness. That Plaintiff's harm stems from any excessive force employed by the Mendota Does does not undermine Plaintiff's allegations of harm caused from the Mendota Does' failure to provide necessary medical treatment. *See Schwartz v. Miller*, 153 F.4th 918, 931 (9th Cir. 2025) ("[W]e explicitly rejected arguments that the severity[] of the medical condition or the officer's conduct [contributing to the condition] constituted a meaningful difference under *Ziglar's* framework for analyzing *Bivens* claims."). Because Plaintiff has adequately alleged facts about his injuries and the extent to which he was denied treatment by the Mendota Does, his claim is for the same constitutional right as in *Carlson*. Therefore, the claim is not foreclosed under *Bivens*. *E.g., Silvers v. Lammer*, No. 5:24-cv-01710-CBM-MBK, 2026 WL 431356, at *7 (C.D. Cal. Feb. 13, 2026) ("Because Plaintiff's claims … arise in the same context as *Carlson*, '[n]o step two analysis is required.") (citing *Schwartz*, 153 F.4th at 932).

Plaintiff's allegations that he was shackled "so tight as to cause pain" and bleeding such that he requested necessary medical care permit the drawing of a reasonable inference that P suffered from a serious medical need that could result in further significant injury or unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. Further, Plaintiff's allegations that the

Mendota Does knew Plaintiff needed medical attention because they both "witnessed his condition" and Plaintiff "requested it" show that the Mendota Does' failure to provide and denial of medical treatment, leading to the scarring of Plaintiff's skin, rises to the level of deliberate indifference. *Id.* Therefore, Plaintiff has stated a *Bivens* claim against the Mendota Does under the Eighth Amendment for deliberate indifference to serious medical needs. *See Watanabe*, 115 F.4th at 1042 ("Failure to respond to an incarcerated individual's serious medical need, even if that need is not technically life-threatening, can constitute deliberate indifference in violation of the Eighth Amendment.") (citing, *e.g.*, *Jett*, 439 F.3d at 1096).

### C.    Leave to Amend

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires" as the purpose of the Rule is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). However, courts may, in their discretion, choose to decline leave to amend due to futility of amendment, bad faith or undue delay by the pleading party, prejudice to the opposing parties, dilatory motive or conduct by the pleader, or a pleader's repeated failure to cure deficiencies by amendments. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–893 (9th Cir. 2010).

As noted above, because Defendant does not object to Plaintiff's request that he be provided leave to amend his negligence claim, thereby conceding that further amendment of the claim is not futile, the undersigned will recommend that Plaintiff be provided leave to amend the claim. *Lopez*, 203 F.3d at 1127.

### IV.    Conclusion and Recommendation

Accordingly, it is HEREBY RECOMMENDED that:

1. Defendant's motion to dismiss Plaintiff's first amended complaint (Doc. 24) be GRANTED IN PART:

    a. Plaintiff's negligence claim ("Count Seven") be dismissed without prejudice and with leave to amend.

2. Plaintiff SHALL FILE within 30 days of entry of any order adopting these findings and recommendations any second amended complaint ("SAC") consistent with this order.

15

3.  Defendant SHALL FILE its response to any timely filed SAC consistent with Fed. R. Civ. P. 15(a)(3).

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent any party wishes to refer to any exhibit(s), that party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **June 10, 2026**                          _____

UNITED STATES MAGISTRATE JUDGE